OPINION
Defendant-appellant Stephen O. Harley appeals his conviction and sentence entered by the Lancaster Municipal Court on one count of domestic violence/threats, in violation of R.C. 2919.25(C). Plaintiff-appellee is the State of Ohio.[1]
 STATEMENT OF THE FACTS AND CASE
On June 1, 1997, appellant was arrested and charged with domestic violence/threats against Mary Harley, his now ex-wife. The case was captioned Lancaster Municipal Court Case No. 97CRB1125. On June 2, 1997, the trial court ordered a temporary protection order, which prevented appellant from not only harassing Mary Harley, but also having any contact, direct or indirect, with her.
On June 30, 1997, the State filed an additional domestic violence/threats charge against appellant relative to an incident occurring on May 8, 1997. The case was captioned Lancaster Municipal Court Case No. 97CRB1391. The trial court did not issue a temporary protection order as a result of the filing of this new charge.
Prior to the filing of Case No. 97CRB1391, Mary Harley filed a complaint for divorce in the Fairfield County Court of Common Pleas, Domestic Relations Division. The domestic relations court issued temporary orders on July 11, 1997, which provided appellant with frequent and ongoing telephone contact with Melissa, the couple's minor child.
Subsequently, on September 24, 1997, appellant was charged with three counts of violating the terms of the temporary protection order, in violation of R.C. 2919.27 (Lancaster Municipal Case Nos. 97CRB2110(A) and (B), and 97CRB2111)[2]. On September 8, 1997, appellant left a message on the telephone answering machine at the marital residence where Mary Harley and Melissa were living. The message stated:
 Melissa, it's been four days since I've been able to talk to you. You haven't called me; I haven't been able to get through to you. Do I need to get hold of my lawyer and see if there's a problem? Call me at work again tonight. I'm on night shift. If I don't hear from you, then I'm going to see what I can do about it. Bye-bye."
That evening, appellant again called the residence. When Mary Harley answered the telephone, appellant immediately asked for Melissa. Without the knowledge of either appellant or Melissa, Mary Harley taped the telephone conversation.
On September 21, 1997, appellant left the following message for Melissa:
 * * * it is a quarter after nine. You told me last night you were going to call me at 9:00. I called you at 4:00 and left a message. Here it is at a quarter after 9:00 and I'm calling again. If you're being kept from calling me, let me know will you? That's all I need know. I need to know if you're being kept from calling back. Talk to you later. Bye.
On October 24, 1997, the State dismissed Case No. 97CRB1125. As a result of the dismissal of this charge, the temporary protection order was also dismissed.
The trial court consolidated the four remaining charges for purposes of trial. The matter proceeded to bench trial on December 23, 1997. At the conclusion of the State's case, appellant made a Crim.R 29 motion for acquittal on all the counts. The trial court sustained the motion for acquittal relative to the three violations of the temporary protection order, finding the State failed to prove by a preponderance of the evidence the necessary element of "recklessness". Appellant presented a defense on the remaining charge of domestic violence/threats. After hearing all the evidence, the trial court found appellant guilty and sentenced him to thirty days in jail.[3]
Appellant appeals his conviction and sentence, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE AN AUDIO TAPE OF A CONVERSATION BETWEEN DEFENDANT AND HIS DAUGHTER ON THE GROUNDS OF RELEVANCE.
 II. THE TRIAL COURT ERRED IN ADMITTING THE AUDIO TAPE OF THE CONVERSATION BETWEEN DEFENDANT AND HIS DAUGHTER BECAUSE IT WAS ILLEGALLY RECORDED.
 III. THE TRIAL COURT'S FINDING OF GUILT ON THE COUNT OF DOMESTIC VIOLENCE THREATS WAS NOT SUPPORTED BY THE EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
During the course of the divorce proceedings, appellant learned Melissa had recanted her trial testimony to her therapist and her guardian ad litem. Appellant filed a motion for a new trial and requested this Court remand the matter to the trial court for hearing. Via Entry dated May 29, 1998, this Court sustained the motion for remand. After hearing testimony from Melissa and allowing appellant to proffer the testimony of her guardian ad litem, the trial court overruled the motion for a new trial. The trial court memorialized its decision in a Journal Entry dated June 12, 1998.
Appellant also appeals the June 12, 1998 Judgment Entry, raising the following supplemental assignments of error:
 I. THE TRIAL COURT ERRED IN REFUSING TO ADMIT AND CONSIDER THE TESTIMONY OF THE GUARDIAN AD LITEM REGARDING MELISSA HARLEY'S RECANTATION OF HER PRIOR TESTIMONY.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN REFUSING TO GRANT THE DEFENDANT'S MOTION FOR A NEW TRIAL.
Any other facts relevant to our discussion of appellant's assignments of error shall be contained therein.
 I II
Because appellant's first and second assignments of error both relate to the propriety of the trial court's admission of three audiotapes, we shall address said assignments together. In his first assignment of error, appellant maintains the trial court erred in admitting the audiotapes into evidence on the grounds of relevancy. In his second assignment of error, appellant contends the trial court erred in admitting the third tape because the conversation was illegally recorded.
The State offered three audiotapes into evidence. Two tapes recorded messages left by appellant on the answering machine at the residence of Mary Harley. Through these messages, appellant requested Melissa contact him. The third audiotape records appellant's calling the residence and Mary Harley's answering the phone. Appellant states, "I need to speak with Melissa." The remainder of the tape is a conversation between appellant and his daughter. Prior to these telephone calls, the Lancaster Municipal Court issued a temporary protection order prohibiting appellant from having contact, direct or indirect, with Mary Harley or her residence.
We find any discussion of appellant's first two assignments of error to be unnecessary as the judgment of acquittal relative to the violations of the temporary protection order renders harmless any claimed error in admission of the audiotapes. When the trial court admitted the audiotapes into evidence, the three violations of the temporary protection order as well as the domestic violence/threats charge were pending. The audiotapes were clearly relevant at the time the State offered said tapes as they related to the then pending TPO charges. We further find appellant's contention the tapes had a prejudicial impact upon the trial court's finding him guilty on the domestic violence/threats charge is speculative and not supported by the record.
Appellant's first and second assignments of error are overruled.
 III
Appellant's third assignment of error raises sufficiency of the evidence and manifest weight claims.
In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 Jenks, supra, at paragraph two of the syllabus.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Thompkins (1997),78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, syllabus 1.
Appellant was charged and convicted pursuant to R.C.2919.25(C), which provides:
 (C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.
Appellant asserts Mary Harley's testimony was evasive and conflicting. He explains, when the victim first gave a statement to the police on June 1, 1997, regarding the May 8, 1997 incident, she did not mention appellant's pulling back his fist as if he was going to hit her. Nor did Mary Harley mention any physical gestures by appellant when she gave the police a second statement on June 2, 1997. It was not until the victim spoke with the prosecutor at the June 20, 1997 pretrial on the initial charge she stated appellant pulled back his fist.
Appellant also maintains Melissa Harley gave incorrect and confusing testimony. He submits Melissa was not sure of the date of the incident and confused the events of June 1, 1997, with the events of May 8, 1997. Appellant further notes Melissa testified she did not think her father was going to strike her mother, but was merely throwing up his hands in frustration. As a result of the discrepancies in the testimony of Mary Harley and Melissa Harley, appellant submits the evidence was insufficient to conclude he was guilty of domestic violence/threats beyond a reasonable doubt.
Based upon the facts noted supra, and the entire record, we do not find, as a matter of law, appellant's conviction was based on insufficient evidence. Nor do we find the trial court's judgment against the manifest weight of the evidence. Although Mary Harley did not initially disclose appellant made physical threats of harm, i.e., pulling back his fist, she consistently related appellant's yelling, "I ought to fucking lambaste you", and "I'm afraid if I start, I wont stop till I kill you." The victim also consistently stated she believed appellant would cause imminent physical harm to her. Melissa Harley likewise testified appellant verbally threatened to hit Mary Harley. The trier of fact was free to accept or reject any or all of the testimony of the witness and access the credibility of those witnesses. Even if the trial court disregarded the testimony regarding appellant's physical gestures; the evidence of verbal threats was sufficient from which to find a violation of R.C. 2919.25(C) because Mary Harley believed appellant would cause her imminent physical harm.
Appellant's third assignment of error is overruled.
 SUPPLEMENTAL ASSIGNMENTS OF ERROR II
In his second supplemental assignment of error, appellant argues the trial court's denial of his motion for a new trial was an abuse of discretion. Appellee moved for a new trial based upon newly discovered evidence pursuant to Crim.R 33(A). The newly discovered evidence was the recanting testimony of his daughter, Melissa Harley.
In State v. Pirman (1994), 94 Ohio App.3d 203, the Eleventh District Court of Appeals summarized the law relative to whether recanted testimony warrants a new trial:
 "Where a new trial is sought upon the ground that a witness subsequently stated that he gave perjured testimony, the question is, when did the witness tell the truth? Recantation by an important witness of his or her testimony at the trial does not necessarily, or as a matter of law, entitle the defendant to a new trial. The determination of such matters rests in the sound discretion of the trial court, whose action will not be set aside except for clear and manifest abuse." (Citation omitted).
* * *
 "When a motion for a new trial based on the recantation of trial testimony is brought in the trial court, the trial court must determine which of the contradictory testimonies of the recanting witness is credible and true and would the recanted testimony have materially affected the outcome of the trial. (Citation omitted).In order to overturn a trial court's determination of a motion for a new trial on grounds of newly discovered evidence, there must be a clear showing of abuse of discretion." (Citation omitted).
 Id. at 209.
At the hearing on the motion, appellant called his daughter to the stand. Melissa testified part of her original trial testimony was untruthful. Specifically, she stated she was not "really sure whether my dad did pull back his arm or not because I just don't know that they got into an argument and that they were fighting back and forth." Transcript of Oral Hearing, June 11, 1998, at 31. Melissa stated she did not recall any other portion of her testimony to be incorrect.
After hearing Melissa's testimony, the trial court stated:
 Melissa clearly said, she was able to look her father in the eye for a substantial period of time at the time of the original trial, I recall this trial very well. * * * she was able to look him in the eye and say (pause) testify consistently, uh, with the fact that he had threatened the mother.
 * * * I'm going to overrule [appellant's] motion for new trial. * * * Melissa appears to be a very nice young lady. * * * she seems to be very bright. She's very reserved and shy. She seems like a good kid * * * just for the benefit of the record, I believe that Melissa's testimony, um, at least with the portion of her testimony that she did observe her father making a gesture consistent with drawing back his fist and arm in a threatening manner toward Mrs. Harley, um, I find that that portion of her testimony as originally testified to is, is what I find and did find to be the truth.
June 11, 1998 Tr. at 47-48.
As the trier of fact, the trial court was in the best position to determine which of the contradictory testimonies of Melissa was credible and true. We find the trial court did not abuse its discretion in placing greater credibility upon Melissa's trial testimony than upon her subsequent recantation.
Appellant's second supplemental assignment of error is overruled.
 I
In his first assignment of error relative to the trial court's denial of his motion for a new trial, appellant asserts the trial court erred in refusing to admit and consider the testimony of Attorney Deborah Wagner, Melissa's guardian ad litem, relative to the child's recantation.
At the June 11, 1998 motion hearing, appellant proffered the testimony of Attorney Wagner. The proffer follows:
 A. * * * I told you, Mr. Happeney [appellant's counsel], and, uh, Mr. Stoughton [Mary Harley's attorney] and Magistrate Trotter that in my conversations with Melissa, uh, and she told me that she lied at the hearing. The way she put it to me and the way my notes indicated is that mom made me lie, um, and that when I questioned her more about that what she said is, is that the night before the trial, her mother had come into her room and was crying and was very dramatic and, and said things like, "Don't you remember what happened? Don't you recall what happened?", uh, "Don't you remember that this is what happened?" and so forth and she was this went on for a period of about two hours to the point where she was, she was confused herself as to what actually happened. Um, and then she said when I questioned her further about it, she said that she never heard the, and I don't know exactly what she's talking about, but she said, what, what my notes indicate is that she said she didn't hear the, the domestic violence threats that were attributed to her father and, um, to her knowledge there had never been any domestic violence against her mother. Uh, I did not know exactly what had transpired so consequently, um, (pause) I can't tell you, I can't relate, I don't know exactly what the threats may have been, uh, but that's what she related to me.
 Q. Did she indicate anything to you about whether her father had drawn his arm back as if he was going to hit?
 A. [Attorney Happeney]. I did not discuss that with her, no. She did not raise that issue.
 Id. at 21.
Although we find error in the trial court's failure to admit and consider Wagner's testimony, we find such error nonprejudicial to the ultimate outcome of the trial court's decision relative to appellant's Crim.R 33 motion. The trial court specifically found Melissa's original trial testimony to be the truth, supra. The trial court stated it believed Melissa's trial testimony regarding the physical gestures. Assuming, arguendo, the trial court had admitted and had considered Wagner's testimony regarding Melissa's recantation, and had determined the child's recantation to Wagner was the truth, we find there was sufficient evidence to support a conviction under R.C. 2919.25(C) because the recantation only related to the verbal threats and not the physical gestures.
Appellant's first supplemental assignment of error is overruled.
The conviction and sentence of the Lancaster Municipal Court is affirmed. The judgment entry of the Lancaster Municipal Court overruling appellant's motion for a new trial is affirmed.
By: Hoffman, J., Gwin, P.J. and Wise, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the conviction and sentence of the Lancaster Municipal Court is affirmed. The judgment entry of the Lancaster Municipal Court overruling appellant's motion for a new trial is affirmed. Costs assessed to appellant.
[1] The State appealed the trial court's granting of a Crim. R. 29 Motion for Acquittal on three other charges heard at the same time. State v. Harley (Dec. 7, 1998), Fairfield App. No. 98CA01, unreported.
[2] Case Nos. 97CRB2110(A) and (B) related to two incidents occurring on September 8, 1997. Case No. 97CRB2111 related to an incident occurring on September 21, 1997.
[3] The trial court suspended twenty-seven days of the sentence.