OPINION
{¶ 1} Appellant Charity Kidd appeals from the June 25, 2007 and July 2, 2007 judgments of the Stark County Court of Common Pleas, Juvenile Division, terminating her parental rights, privileges and obligations with respect to her two minor daughters, Tory Gibbons (DOB 7/10/91) and Brandy Gibbons (DOB 7/4/92). Appellant also appeals from the July 5, 2007 judgment of the trial court denying appellant's motion for new trial. Appellee is the Stark County Department of Job and Family Services ("DJFS").
 STATEMENT OF THE CASE AND FACTS {¶ 2} Tory and Brandy Gibbons are the natural children of appellant and Jack Gibbons.[1] The children were adjudicated dependent on December 6, 2005 and have continuously remained in the custody of DJFS. On September 29, 2006, the trial court extended temporary custody for six months to permit continued attempts at reunification.
 {¶ 3} DJFS involvement with appellant began in 1991. DJFS's initial concerns were lack of basic necessities, poor home conditions and lack of supervision involving appellant's older children, Clarence and Brett Kidd. In 1993, Jack Gibbons was convicted of gross sexual imposition and child endangering regarding Clarence Kidd, age six at the time. The gross sexual imposition conviction was reversed by this Court inState of Ohio v. Jack Gibbons, Stark County App. No. CA-9556 (September 19, 1994). This Court upheld the conviction for child endangering as there was there was evidence that Jack Gibbons had repeatedly punched and beaten Clarence with a belt, *Page 3 
and made him stand in a corner for six hours, from the time he returned from school, until the time he went to bed.
 {¶ 4} In 2001, DJFS addressed concerns regarding the sexual abuse of Tory and Brandy Gibbons by Clarence Kidd and cousins Raymond and Charles Fox. Thereafter, in September, 2005, DJFS sought removal of Tory and Brandy Kidd for several reasons: 1) deplorable residential conditions (overflowing trash, fly infestation, broken windows, falling ceiling); 2) lack of food; 3) the presence of numerous other adults living at the house, including cousins Raymond and Charles Fox who sexually molested the girls in the past; 4) appellant's lack of cooperation with DJFS; and 5) physical and verbal abuse.
 {¶ 5} On February 12, 2007, DJFS filed a motion for permanent custody. The trial court held a hearing on June 7, 2007 regarding this motion. The witnesses who testified include Cheri Vandeborne, the DJFS caseworker assigned to this case; Cynthia Zurbrugg, mental health therapist with Child and Adolescent Services; and both parents, who were represented by legal counsel. Brandy Gibbons was also represented by legal counsel because, at the time of the filing of the motion for permanent custody, she was not in favor of permanent custody; however, at the time of hearing, she had changed her mind and was not contesting the permanent custody action. Dwaine Hemphill, the Attorney Guardian Ad Litem ("GAL"), also testified and submitted a written report.
 {¶ 6} At hearing, Ms. Vandeborn testified in regards to appellant's efforts to comply with the case plan that was developed by DJFS with reunification as its goal. Ms. Vanderborn testified that the mother had substantially complied with the plan by obtaining acceptable housing, obtaining verifiable employment, completing a parenting *Page 4 
evaluation, and complying with urine screens. Appellant was being treated for depression and was taking an anti-depressant; due to the medication, she was much calmer and has a better outlook. However, since DJFS's custody of the children, appellant was allowing individuals who had engaged in inappropriate sexual contact with the children (Clarence Kidd, Raymond and Charles Fox) to be present during visitation and to reside at her home. In addition, appellant brought a convicted sex offender to a visitation with the children. Ms. Vandborne testified her main "concern remains that she [appellant] still does not understand how much risk she's placing her girls in when she allows these people to be around them. I mean when I've spoken with her about this in the past, just in the recent past, she says that they're my family, I understand they're your family, but your girls are your family too, they're not adults, they're still children and they need someone to look out for their best interest." T. at 36.
 {¶ 7} The GAL testified and "clearly and unequically (sic) recommend permanent custody for both girls" and had "no hesitation in saying that neither girl should ever return to the home with either parent." June 7, 2007 Hearing Transcript, p. 105. The GAL further testified that Tory clearly did not want to return home and desired placement and/or adoption with her current foster placement. He further noted that Brandy had difficulties in her initial foster family placement, had runaway, and was subsequently placed in a group home. Initially, Brandy viewed return to her mother as an option to the group home, but Brandy "subsequently pulled things together and has moved out of the group home into an appropriate placement." T. 106-107.
 {¶ 8} Mother testified she is now a stronger person and even though she feels that she can trust the other family members who sexually molested her children "if the *Page 5 
State says I can't take my girls around there, that the way it'll be." T. at 101. It is undisputed that appellant loves the children, but the bond with her children is strained and the children have requested that visitation with her not continue, according to the caseworker. T. at 80.
 {¶ 9} On June 25, 2007, the trial court granted permanent custody to DJFS and terminated both parent's parental rights, stating the children have been in custody of DJFS for 12 or more months in a consecutive 22-month period; the children cannot be placed with either parent at this time or within a reasonable period of time; and it was in the children's best interest to grant permanent custody to DJFS.
 {¶ 10} On July 2, 2007, appellant filed a "Motion for New Trial," pursuant to Civ.R. 59(A)(8). In her motion, appellant relied on "new discovered evidence, material for the Mother applying for new trial, which with reasonable diligence could not have been discovered or produced at trial". Attached to the motion was a copy of a handwritten letter allegedly written by Tory Kidd, stating she loves her mother and she "had no part in making this desition (sic)."
 {¶ 11} The trial court denied the motion for new trial on July 5, 2007.
 {¶ 12} It is from the trial court's findings of fact, conclusions of law and judgment entries that the mother appeals and sets forth the following assignments of error:
 {¶ 13} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH THE APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. *Page 6 
 {¶ 14} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE CHILDREN WOULD BE SERVED BY THE GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 15} "Ill. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES PUT FORTH GOOD FAITH AND DILIGENT EFFORTS TO REHABILITATE THE FAMILY SITUATION.
 {¶ 16} "IV. THE JUDGMENT OF THE TRIAL COURT TO DENY APPELLANT'S MOTION FOR NEW TRIAL WAS AN ABUSE OF DISCRETION."
 I. {¶ 17} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St. 2d 279,379 N.E.2d 578.
 {¶ 18} Revised Code 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C.2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon the filing of a motion for permanent custody of a child by a public children services agency or private child *Page 7 
placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 19} Following the hearing, R.C. 2151.414(B) authorizes the trial court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 20} Therefore, R.C. 2151.414(B) establishes a two-prong analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 21} In this case, the trial court found that two of the four circumstances delineated in R.C. 2151.414(B)(1) were found by clear and convincing evidence. First, the trial court found that the children have been in DJFS custody for 12 or more months in a consecutive 22 month period under division (d) of the statute. No party has appealed this finding. Pursuant to R.C. 2151.414(B)(1), this conclusive finding, coupled *Page 8 
with a showing by clear and convincing evidence that permanent custody is in the best interest of the children, provides a sufficient basis for this Court to affirm the trial court.
 {¶ 22} Nevertheless, this Court will address the issues raised by the appellant's first assignment of error because the trial court further determined that the children cannot be placed with either parent at this time or within a reasonable period of time under division (a) of the statute. Appellants claim this finding is against the manifest weight and sufficiency of the evidence.
 {¶ 23} Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C.2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 24} The trial court found by clear and convincing evidence that the following factors set forth in R.C. 2151.414(E)(1) were present: Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. *Page 9 
 {¶ 25} In regards to termination of the mother's parental rights, the trial court found that it was "unable to find that these children could be safely returned to Charity Kidd based upon her failure to remedy the problems that led to the removal of these children."
 {¶ 26} This Court finds relevant competent, credible evidence was given at the motion hearing to support this finding. The evidence demonstrates a pattern of appellant's involvement in a cycle of physical and sexually abuse. Mr. Gibbons allegedly physically abused appellant and abused appellant's son who in turn abused Tory and Brandy. Appellant continued to expose her daughters to sex offenders and continued to associate with them during the agency's attempt at reunification. Ms. Vandeborn testified in recommending permanent custody: "Because just in my over two years of dealing with this family, the same presenting factors have been evident throughout the whole case, and yes, mom has completed the majority of her case plan, however her mind set has not changed and the girls still need protection * * * we have concerns all the way back to 2000 and before that, mom allowing sex offenders to be around her children and that was why they were removed at one point * * * so I don't feel that anything in that respect has changed with mom. T. at 85.
 {¶ 27} In light of the above, this Court finds the trial court's conclusion that the children cannot or should not be placed with mother was not against the manifest weight and sufficiency of the evidence.
 {¶ 28} Appellant's first assignment of error is overruled. *Page 10 
 II. {¶ 29} In her second assignment of error, appellant contends the trial court's finding that the best interest of the girls would be served by granting permanent custody was against the manifest weight and sufficiency of the evidence.
 {¶ 30} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 31} Of paramount concern to the trial court and this Court is the safety of the Tory and Brandy. See also, In re A.B. v. Summit CountyChildren Services Board (2006) 110 Ohio St.3d 230, 234, 852 N.E.2d 1187,1191 (the law places safety as the paramount concern in the delivery of child welfare services and decision-making). In making determinations relative to permanent custody, a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent or child. R.C. 2151.414 (C).
 {¶ 32} In light of the extended period of time the children have been in the custody of DJFS, the mother's inability to protect her children from incidents of abuse throughout their lifetime, and the report of the GAL and his testimony regarding the *Page 11 
wishes of the children, this Court finds the trial court's decision to permanently sever the parental relationship in the best interest of the children is supported by reliable, credible and competent evidence.
 {¶ 33} Appellant's second assignment of error is overruled.
 III. {¶ 34} Appellant contends DJFS failed to make a good faith effort to initiate and implement the reunification plan, relying upon R.C.2151.414(E)(1). Specifically, appellant claims that the caseworker made no effort to have appellant enroll in a Parent Mentoring Project.
 {¶ 35} This argument is without merit for several reasons. First, the trial court found that the children had been in the temporary custody of DJFS for twelve of the prior twenty-two consecutive months, and this finding, coupled with a best interest determination, is sufficient reason for granting permanent custody in favor of DJFS.
 {¶ 36} Second, the Ohio Supreme Court recently ruled in In ReC.F., 113 Ohio St.3d 73, 2007-Ohio-1104, that an agency need not establish it made reasonable efforts toward reunification at a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413 if the agency has established that reasonable efforts have been made prior to the hearing on a motion for permanent. In this regard, the record reflects the trial court made a reasonable-efforts finding when the children were adjudicated dependent on December 6, 2005.
 {¶ 37} Lastly, Ms. Vandeborne testified at the permanent custody hearing the agency referred appellant for substance-abuse assessment, parenting evaluation, and individual and family counseling at Community Services in Alliance. Appellant was also *Page 12 
referred and recommended for the Parenting Mentoring Project in Alliance. However, no classes were scheduled to be held in Alliance, so the agency offered a bus pass to appellant so she could attend the classes in Canton, however, appellant did not complete the class.
 {¶ 38} Based on the evidence, we cannot say that the trial court abused its discretion when it concluded that "notwithstanding reasonable case planning and diligent efforts by the agency", the children could not or should not be placed with either parent within a reasonable time, granting permanent custody to DJFS.
 {¶ 39} Appellant's third assignment of error is overruled.
 IV. {¶ 40} Appellant argues that the trial court abused its discretion in denying appellant's motion for new trial. We disagree.
 {¶ 41} Appellant moved for a new trial on the basis of newly discovered evidence. Appellant claims she "recently received a letter from her daughter [Tory] stating that she had no part in making this decision" and "the letter goes on to say how the daughter loves her family." Alternatively, appellant requested the trial court reconsider its judgment, take additional testimony, and have an in-camera interview with the children.
 {¶ 42} The trial court summarily denied the motion.
 {¶ 43} Civ.R. 59(A)(8) permits a new trial on the ground of newly discovered evidence where such evidence is material for the party applying, and where it could not with reasonable diligence have been discovered and produced at trial. Case law has established that before a new trial may be granted on the basis of newly discovered *Page 13 
evidence, the evidence (1) must be such as will probably change the result if a new trial is granted, (2) must have been discovered since the trial, (3) must be such as could not in the exercise of due diligence have been discovered before the trial, (4) must be material to the issues, (5) must not be cumulative to former evidence, and (6) must not merely impeach or contradict the former evidence. Sheen v.Kubiac (1936), 131 Ohio St. 52, paragraph three of the syllabus. See also, In re: S.S., A.S. and J.S., 9th Dist. No. 04CA0032, 2004-Ohio-5371
(applying the Scheen standard for determining a motion for a new trial based upon newly discovered evidence in a permanent custody case).
 {¶ 44} A motion for a new trial is addressed to the trial court's sound discretion and may not be disturbed on appeal absent an abuse of discretion. Taylor v. Ross (1948), 150 Ohio St. 448, paragraph two of the syllabus. An abuse of discretion implies that a court's ruling is unreasonable, arbitrary, or unconscionable; it is more than a mere error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 45} R.C. 2151.414(D) sets forth the factors for the court to consider when determining the best interest of the child. One of the statutory factors is, "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." R.C. 2151.414(D)(2). The Ohio Supreme Court has held, "[t]he statute unambiguously gives the trial court the choice of considering the child's wishes directly from the child or through the guardian ad litem". In re: C.F., supra, at ¶ 55.
 {¶ 46} Upon review, we determine the "new discovered evidence" relied upon by appellant does not justify the granting of a new trial. As an initial matter, we note *Page 14 
appellant did not request that the court conduct an in camera interview of the children. Appellant could have exercised due diligence before trial and given the trial court the option of having the child assert her opinion rather than relying upon the GAL's representations.
 {¶ 47} In addition, we agree with DJFS that the letter is consistent with the GAL's testimony. He stated ". . . Tory has this long term placement in a foster home that is not an adoptive home and Tory would really like to remain in this home until she turns 18, she's very bonded with the people in the home . . . she's certain she doesn't want to ever return home, she's very clear on that . . . her position now is she would like to leave it to Your Honor to decide what's best for her, she certainly doesn't want to go home and she's comfortable where she is, but I believe permanent custody is in her best interest." T. at 107.
 {¶ 48} In the handwritten letter, Tory never states she wants to return to her parents. She indicates very briefly and vaguely that she had no part in making the decision. Even if we presume this is in reference to the permanent custody determination, such a statement was consistent with the evidence at trial, is cumulative and would not have changed the outcome of the hearing. We find the trial court did not abuse its discretion in denying appellant's motion for new trial.
 {¶ 49} Accordingly, appellant's fourth assignment of error is overruled. *Page 15 
 {¶ 50} The judgment of the Stark Division, is affirmed.
Delaney, J. Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] Jack Gibbons is not a party to this appeal. *Page 1